Good morning. Richard Wall on behalf of appellant Wayde Lynn Kurt. May it please the court, counsel. Notice the first issue I'd like to address this morning is the error the district court committed in failing to give an entrapment instruction to the jury. The defense in this case was entrapment. That was the only defense. This was a matter which Mr. Kurt never denied that he actually possessed firearms. Well, I guess it's, that does emphasize sort of the importance of the defense, but it's not uncommon that defendants go to trial and have terrible, I mean, the evidence is just very damning against them, and that doesn't, you know, I mean, they could have confessed, that could be on video, that could be any number of things, but it doesn't necessarily mean you get a self-defense defense or any number of things. But here, I guess what you're saying is he basically admitted all of the elements of the offense one way or another, so entrapment would have been the only way that he could have gotten, well, even, I don't know if the only way, but the likely way that he would have gotten. Now, you know, I am troubled by that, and am I correct that a harmless error analysis would be problematic here? I don't think there can be a harmless error analysis. Well, there seems to be sort of a split on the authority here. Well, the reason I don't believe you can have harmless error in this kind of situation is because the defendant has a right to put on a defense, and then he has a right to have a jury determine the facts. That's a constitutional Sixth Amendment right. What essentially happened here is the judge determined the facts. The judge said, I don't believe his story. I don't think his story is credible. No, but the question is, I think, you know, putting aside his credibility determination, if you read the record, you know, more neutrally, you think even in that light, there's sufficient evidence to merit the instruction? Absolutely. All right. And I'll explain. Let me be more specific. You know, putting aside for a minute the judge's comments about who he believed and who he didn't believe, but what did he depend on in terms of what elements of the entrapment defense were lacking in declining to give the instruction? He didn't specify. He simply said, I don't believe the story, so I'm not giving the instruction. That was pretty much all that the judge said on the record with regard to why he refused to give the instruction. And that's actually highlighted in the government's own brief. If you look at pages 19 to 20, they, I think, four or five times possibly, at least three times, the judge indicated, I don't believe the story. It's, I think it's a fabrication. I'm not giving the instruction. Well, okay, but let's say, were you trial counsel? Yes. Okay, so if you had gotten the instruction, what would you have argued? Tell me what the facts were that, you know, set the credibility aside. What would you have argued? Okay. This was basically, Mr. Kirk's defense said, what's what the test, not only his testimony, but testimony of other witnesses supported. That he had witnessed a very, very brutal assault on this person he knew as Anton. That had been committed by members of what was called the Baha'u'llah Bound Skinheads, the BBS. And that afterwards, he felt a moral obligation to try to help protect this person from these people. That in doing so, he maintained contact with David Udseth, who turned out to be working for the government. The reason he wanted to maintain contact with David Udseth was to keep in contact and inform of the activities of these other members of the Baha'u'llah Bound Skinheads. So his whole reason for even having anything to do with this government agent was to try to maintain contact so he could inform Anton and his girlfriend if there was any activity by these BBS members that would potentially endanger him. Do you think it matters in this case that obviously, if we talk about the group that we're talking about, the, you know, the Odinists and the, you know, just all of the allegations, I think that it's not something, well certainly not politically correct, but certainly not the type of organization that most people, sort of like the Nazi party or something like that. And so to have the likelihood that someone could convince you to go along with an organization that really probably to so many people is really just very anti-everything that we believe. I mean, it's a, it's, do you have to have a little more for entrapment on something like that, as opposed to say, if it was entrapment to smoke a joint of marijuana? No, I don't believe so. The evidence, the case law is pretty clear. The slightest evidence is enough to get the instruction. Even if it seems highly improbable, it's enough. It's, the issue is the jury gets to make that decision. It's not so much what the decision is, but who gets to make it. And that was the problem here. The jury should have been allowed to make this decision. Well, but if you're giving, but giving instructions, it is an abuse of discretion, and it has to be. So the slightest evidence, there is, a trial court does get some leeway there. So that's, and so in weighing what is evidence that someone would be likely to go along with a group that has probably such, you know, morally offensive values to a lot of people, is, does that have anything to do with it? Well, only to the extent that if the judge determines that no reasonable person could have believed this defense. And I would submit that that's way beyond what the evidence showed here. Mr. Kerr is not your ordinary citizen. He had readily admitted on the stand he has very different views about the government, about race. He has different views about how citizens should behave, how the government should behave. He's pretty much an anti-government person, and he explained all this. And that was part of the explanation for why he did the things he did. That the only reason he got these firearms was because he felt it was necessary to maintain Mr. Udset's confidence so he could protect Mr. Johnson. So how do we factor in that he had had a firearm offense previously, correct? He had, but it was 20 years prior, and there was no evidence he had ever in that whole time obtained or had anything to do with firearms. He testified that he did not. And there was other evidence when Mr. Johnson asked him to help him obtain a firearm, he refused to do that. Which is an indication he didn't want to have anything to do with firearms. And his testimony was, I really felt it was necessary here because I felt a moral obligation to protect these people. And the government, whether intentionally or not, took advantage of that sentiment, that belief on his part. The court, when he said that, said, hey, you don't even know this guy's name. I don't believe that. So what you're saying there is that was a credibility finding that should have been left to the jury. Absolutely. That's for the jury to decide. The jury could very well have believed this testimony, I think. Now, would they have? I don't know. But the issue is, it's the jury that gets to decide that, not the judge. And what happened here was the judge took that away from the jury. I was quite surprised, frankly, when Mr. Hicks was asked, do you want me to give the instruction or not? And he said, no, I don't want the instruction given. I really thought that he was, because I felt he would have believed the jury was highly unlikely to buy the defense. But, again, the point is, they're the ones who get to make that decision. Not Mr. Hicks, not the judge. And that decision was taken away from us. And what I think this response was, I'd rather retry this than give the instruction or something. That, basically, was the one. So what, you would like us to give him the opportunity, give him his wish, and let him retry it? I think this Court has to. I think the law compels that. The other issues would be, on retrial, errors in excluding photographs and excerpts from these two books, the Turner's Diary and the Begraved. And the only thing I want to say about that is, a defendant has the right to put on the best evidence he has, not just the evidence that a judge thinks is enough. And it's important in a trial, or at any time, when you're trying to convince somebody to someone, not just to tell, but to show. They teach us that in kindergarten. Show and tell. What happened here was the judge limited Mr. Kirk to telling, didn't give us the opportunity to show. And the showing would have really improved the jury's understanding of Mr. Kirk's testimony. And I believe it really led to a lot more credibility to it. Can I ask you on that? You said, I know your argument is it couldn't have been harmless. But I'm more curious from the standpoint of, in terms of the case law, whether it's clear whether this can even be subjected to a harmless error analysis. I mean, I know your view is it couldn't have been harmless because you said, you know, it's our defense. And so, therefore, it just affected the whole proceedings. But let's just say that I think that no juror would have really believed this, but it should have been given. Can I do a harmless error analysis? No. Yes and no. Okay. Because the law is, on giving the instruction, is if any reasonable juror could believe the evidence that's put on to support the defense, that it has to go to the jury, that's the same analysis as harmless error, essentially. Well, I just, you know, I was a trial judge and you're really looking at three trial judges here. And a lot of times, you know, I mean, trial judges make decisions, you know, I think this is pretty, I don't really think anyone's really going to believe it, but I'm just going to give it to be safe, much like this trial judge said here. And then after you've heard everything and you can look at it and say, you know, there's no one would have believed this. But I still would have given it. That's. Well, again, the judge did not make any finding on the record that no reasonable jury could believe this. He simply said he didn't believe it. And this court would have to reach that point. So if we thought that no reasonable juror could have believed it, then the judge didn't abuse his discretion, so you don't go there. Is that what you're saying? No error, so there's no need to do a harmless error analysis. Correct. Okay. The last issue would be, I want to address, is the sentencing enhancements. The court applied a four-level enhancement for possession of firearms in connection with another felony offense. The government can't identify what the felony was, what the crime was that Mr. Kurtz supposedly was going to commit with these firearms. Other than he uses this phrase that they took from something he told the CI that he intended to execute, quote, tactical silent hits. Well, I guess. Threats about killing the president or something like that, too, didn't he? Never made a threat. He made statements like he ought to be killed or, you know, it would be good for the country if he was killed or something. But nothing, he never said, I'm going to do this. They had no evidence he planned to do anything like that. I mean, those kind of statements you could probably hear in many bars in this country on a late Friday evening when people have had something to drink, because there are many people that do not like President Obama. Republicans drinking. Well, people that don't like President Obama. You know, he didn't say anything about, I'm going to do this, or I have any plans to do anything. Didn't they have target practice with something, Obama posters, too? Well, no, they didn't have Obama posters as a target practice. What were the targets? They were just targets that they were using. The primary purpose of the target practice was to see if the guns would function the way they were supposed to. There was, he had mates in ammunition and they were trying to make sure the ammunition would work. Now, the general point you're making about identifying the crime is in connection with what? Sensing enhancement? Sensing enhancement, yes. They didn't actually identify, and the Noster case that was cited by the government is very distinguishable, because there the guy had written plans, he had made statements that he was going to bomb specific or attack specific places to create a change in stock price so that he could make money on it. Very specific plans that he had in mind. Well, the district court made, though, a finding that Kurt had a firm intent to commit an act of domestic terrorism, correct? But he didn't say the specific act. Well, it was, yeah. You want to save the balance of your time for the panel? Yes, I will, thank you. Thank you. Good morning, Your Honors. My name is Earl Hicks and I'm representing the United States on this case. I was trial counsel and I've reviewed this record rather carefully, and the first thing I'd like to discuss is this concept that Judge Nielsen merely said that he didn't believe the defendant's story, so therefore he didn't give the entrapment defense, nor that he never found that a reasonable jury could ever determine that Mr. Kurt was entrapped. There is a record of that, and that can be found at the excerpt of record 462 through 478, and the court indicated it had concerns about the entrapment defense. Well, it does sort of seem like the court did do some credibility weighing here, and Mr. Kurt is not a, he's not an ideologically appealing defendant, but counsel for the appellant basically said, you know, if he admits all the elements of the crime, his only defense was entrapment. So if you credit everything that he says as true, if it could technically be entrapment, even though you don't believe him, even though you don't believe him, isn't he entitled to the instruction? It was not entrapment. There are two elements, and he was not entitled to the instruction. He did not, he has to prove, he has to show two elements, and he has to have evidence, slight evidence on both of those elements, and he didn't show it. And I'm just going to go back for a minute to the court, because I think that if you read what the court did on the issue of entrapment in saying that, I don't think it was a credibility determination. It was five guns were involved, two were owned by the defendant, three were owned by Udset. Kurt got his hands on them, but on 8-21, not before that, and what he's talking about is he put his hands on Udset's gun on that date. There were discussions about there being a reloader, and no talk about him buying guns. That's what's testimony is there in the record, and that's what's there. The other thing that the court discussed, that there was target practice which was consistent with him owning guns before, and those were the things the court discussed. And then... Well, see the problem is, so he's discussing evidence, you know, that may not support, say, lack of predisposition, but he, you know, is ignoring what evidence there is that supports lack of predisposition. No, I think that a court has to go through an analysis, and a court has to say... He didn't do it, he just went through one side of the case. No, no. And then he said so many words, you know, several times, this is not credible, I don't believe this. Well... Right? Well, he did not believe them, and rightfully so, but... Well, whether it's right or not, it's not his function. Right. Well, I disagree. I think that a review of the record will show that he had specific reasons. Now, let's go to the entrapment instruction, and what does the defendant say about the reason why he purchased the firearms, if you believe him, Your Honors? If you believe what the defendant says for the reason why he purchased his guns, how in the world can it be entrapment? The reason he purchased the firearms, and there's an excerpt of record on this, and it's repeated, repeated in the briefs. The sole reason that he purchased it was because of inaction by Mr. Utseth. Mr. Utseth, the government's confidential informant, would not provide him with information, so he purchased firearms. Not that Mr. Utseth induced him. Mr. Utseth did not induce him to buy the firearms. Mr. Utseth, and he says it himself, the reason he purchased firearms was because of inaction by Mr. Utseth. How can a government informant buy inaction and do somebody? And then if you look at- And what does he say in his testimony? He says it's because of this Johnson- Right, it's because of Johnson. Okay, so he's inconsistent. He's inconsistent, but that still is some evidence of another reason, right? No, the reason he purchased the firearms, and I don't think it's inconsistent at all, the inaction is that Utseth failed to tell him information about another group in Idaho. That's what the inaction was. That's the reason he did it. And what he said, in effect, is that his purpose, and understand the government informant had no idea of why he was doing what he was doing, even if you believe his testimony. The government informant had no reason, and all the government informant, if you believe him, although the government informant denies it, and it's nowhere on the tapes, all the government informant said is, would you be my armorer? That's all that he said. And so- Said that? Are you saying that would be no evidence of entrapment? I'm saying it's not enough to give the instruction, and the case law we've cited in our briefs, it's not enough to suggest to somebody to commit a crime. As trial judges, you all know that if somebody comes up to somebody and says, do you want to sell me those drugs? And the person sells them to him, and that's all that there is there, that's not entrapment. Mr. Curt was asked, there was a proposed instruction, and we went down the line, and we said, did he threaten you? Did he keep on bothering you, in effect, about it? In fact, we went down the whole line of things with entrapment. And Mr. Curt consistently said, no, no, no, no. Did he threaten any harm to you? No. Was he a friend? No. He went through every single one of those and said, no, no. So he wasn't induced. He wasn't induced. He wasn't threatened. There was nothing there. If we find that there was, and we haven't discussed this, so I'm just asking you this hypothetically, if we were to find that the court should have given the entrapment instruction, can that be subject to a harmless error analysis? I have not considered that, Your Honor. And I would merely be speculating on it without doing further research on it. My understanding of the law of entrapment is that if you find that the court should have given it, and you have to have a firm conviction when you make that finding, and I did write a note on that, what the law is, then you have to, I don't know if you can go to a harmless error test. I don't know the answer to that. I would indicate that the government thinks that it's absolutely true in a case such as this. The government would think that it couldn't make an argument for that proposition, and that argument being, wait a minute, there's such overwhelming evidence. After all, the crime here is possession of a firearm. And if you look at this, other things involving this case that I just want to bring out real quickly on that entrapment instruction is, remember that he also went and purchased his own ammunition at one point. Remember that he used false names to purchase a stock for an AK-47. And in effect, lied about that in one sense. But all you have is, do you want to be my armor? And I'm not trying to avoid your question, Judge. I'm just telling you, I don't know the answer. And I'd much rather tell you that than just wing it. I did not anticipate that question, Your Honor. And I apologize to Your Honor for that. Sometimes I don't have the same insight as the court does on a lot of matters, because of your experiences on those things, and the way you as courts have to look at these matters. There has to be something more that the government did something more than merely provide the opportunity to commit the crime. There has to be something more. You do have to look at the defendant. What was the purpose? What did the defendant do? Why did he want the firearms? He tells you in his own testimony, I wanted the firearms. I wanted the firearms so that I could gain the confidence of Mr. Unset, so that he would tell me about this white supremacist group in Idaho that was potentially a danger to my client. And that's repeated in the appellant's reply brief. In the appellant's reply brief, they just say the only reason why he had those firearms was for the, excuse me, in the appellant's reply brief, Kurt's sole motive in obtaining firearms was to allow him to information that he believed would help him assist Johnson and his girlfriend from becoming the victims of crime. That's what's in his mind. That's what he's telling the jury. How can there be entrapment? Did the informant put that in his mind? By his inaction, he did. But where is inaction on the part of a government agent? Where does that become entrapment? Where is there a case out there that says that that's entrapment? This person decides of his own accord, and the only reason he did it. The question is, the way the case law puts it, you know, if you have a person, citizen, who's not predisposed to commit the crime, and the government puts in his mind that he should commit it, is that sufficient evidence of inducement to warrant an instruction? Well, there's two elements, of course. There's the predisposition. And the predisposition is different. Does the defendant have to show both? I mean, the defendant? Yes, he does have to show them both. I don't know. The present case law seems to question that. But suppose it's true. You see, here's the situation. The guy's got a gun conviction that's 20 years old. It's unchallenged that, well, for 20 years he didn't go near a gun, right? Which is proof of lack of predisposition, isn't it? Well. It's sufficient to go to the jury, I mean. No, I don't agree with that. Why not? Because there's other issues that are involved there that are pointed out. The other issue is that there are other issues, but those are for the jury to determine in considering the instruction, not to deny the instruction. No, the court can consider that as one of the reasons why whether or not there's a predisposition. I know, but you see, you're saying court should make a decision on the merits of whether or not there's a predisposition. The court has to. You know, the cases say you only need slight evidence, right, to support the giving of the instruction. Your Honor, how can a court decide without talking about the facts? And some of the facts that are there is he had a 20-year-old black conviction. He can decide without saying, well, I don't believe this testimony, so I'm not going to consider it. Well, he considered that at the age of his gun conviction. He did consider that. And then he said, I don't believe it. But then there's an issue of predisposition. He doesn't say he doesn't believe the defendant. Then you also have other issues involving predisposition, which- Well, some people actually have no prior gun convictions. So a person that has no prior gun convictions would safely be in the camp if there's no predisposition. A person that does have a prior gun conviction, that is evidence of predisposition. The question is, how much evidence is it? Well, then you have to combine that with that he tinkered with, his own testimony was, is that he tinkered with the gun and made it automatic. That's one thing that's in the record. The second thing, there are a couple of other things in the record that show predisposition. He went out and bought ammunition on his own. Yeah, I'm sure you're correct at, and I agree with you, that there is plenty of evidence of predisposition. So if it went to the jury, they probably would've, if the instruction were given, they probably would've undoubtedly found in your favor, right? But the question is, is there any evidence of lack of predisposition? That's what it comes down to. Well, it doesn't do any good to cite all these little bits of evidence that show predisposition. I mean, no one's gonna argue with that. Your Honor, if I could respectfully disagree with that, because I think the court has to consider the evidence in making a determination that he does not believe that, and now these were not contested facts that we're talking about. We're not talking about the court said, I don't believe you, this is a contested fact. That's not how he made his analysis, and I respectfully disagree with the court, and I respectfully disagree with counsel, and I think it's in the record. It was, there's no question that he purchased ammunition on his own for the firearms. There's no question about that. We have them on videotape. There's no question that under using a false name and a false mailbox, that he purchased a stock for the AK-47 rifle, that he was purchasing gun parts. What you're arguing for is, if there's strong evidence of predisposition, then that automatically says you're not on the tail of the instruction. That's not the law. Well, I'm talking about the fact that there is one element clearly that he can't show, and that was that because of what the government did, he purchased those firearms, and that's if you believe him. That's what I'm saying. Disregard whether you believe him or not. How does that, how does a person say, the only reason I did this, it didn't have anything to do with the defendant other than he said, I want you to be my armorer, and that's like a person who says, will you sell me drugs, you know, and that's all he did. Now, I want to say this, that, you know, there are laws out there that are promulgated by your honors and by the Supreme Court of the United States, and the government chose to follow the law here. The government believed 100% that this was not it, and your honors, just because you're a defendant doesn't mean you can just totally disregard the law and come up with a defense. That's why we have the law, to follow it. Well, I think what, just because someone doesn't have a good entrapment argument doesn't mean that there's not slight evidence of it, and so that's what we have to look at. If there's enough evidence of it, that doesn't mean, but then the question from there that I had is, if there was slight evidence, but just because it's not a good defense, you can't deny someone a defense if there's enough evidence to give the instruction. So you're a little, I think you're, just because you would win doesn't mean an instruction doesn't have to be given. Your honor, in our brief, we recognize that, that it's only slight evidence, and we argue that there's not even slight evidence. Well, that's what it has to be for you to prevail. Right. It has to be that it wasn't slight. Yeah, because if it was slight, then the instruction had to be given. In the government's position, it has to be slight evidence on both elements, and that there's case law that supports that proposition. Thank you, your honor. Thank you. All right, I think you have a little rebuttal left. Thank you, your honor. Just briefly, and these are cases that are cited in the appellant's opening brief. What constitutes an inducement by the government can be many different things depending on the circumstances of the case, and this is certainly an unusual case, so the nature of the inducement here was probably not what would be thought of as typical inducement. I disagree completely with counsel that it was Mr. Utset's inaction that was the inducement. It was his request that Mr. Kurt become the armorer for this fictitious group that he said he was joining, and Mr. Kurt testified they both were. You think that itself is evidence of inducement? Yes, because. And you think that's enough in and of itself? Yes, absolutely, because Mr. Kurt also testified that both of them understood that would mean, as an armorer, he would have to have knowledge of weapons, he would have to handle weapons, he would have to be the person responsible for doing that. How is that different from your opponent's example? Well, it's not any different than, you know, saying, would you sell me drugs? No, it's not different from that, but there's more to it than just that request. There's more to this story than just he met somebody in the street and he said, I want you to be my armorer. There's all the background as to how these people came together, the fact that Mr. Utset's working for the government, and he's being asked by the government to get incriminating evidence on Mr. Kurt. So, that's enough because of the circumstances. You have to look at the totality. So, you're not resting on, would you be my armorer, as the only evidence of entrapment? No, you have to look at everything in the context in which that request was made. Because if that were the only statement, I think you're sunk. Right, no. There were a lot of statements about what Mr. Utset said he was going to do, and that there were these other groups that he was in contact with, and Mr. Kurt testified he was very concerned about the activity of those people, and he felt the only way he could continue to keep Mr. Johnson Anton informed about potential threats to him and his girlfriend was to maintain contact with Utset and have his confidence, and he felt the only way to do that was to show him, yes, I can be your armorer. And that meant he had to show up with some guns. That's entrapment. All right, we've taken you over your time. Thank you both for your argument. This matter will stand submitted.
judges: Collins, Tashima, Callahan